IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE MURRELL,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    No.  07 C 5656
                                 )
MIKE JOHANNS, SECRETARY OF       )
AGRICULTURE (USDA),              )
                                 )
            Defendant.           )

MEMORANDUM ORDER

In response to this Court's request for a more informative "detailed point-by-point response...explaining why she is entitled to reversal of the decision" of the United States Department of Agriculture's Office of Adjudication and Compliance, plaintiff Michelle Murrell ("Murrell") has tendered the attached December 10, 2007 Response. Murrell's account certainly reflects a great deal of friction in the workplace over an extended period of time (that was also recounted at length in the Final Agency Decision about which she complains)--but what is singularly absent from both the Response and the Final Agency Decision is the slightest hint that the treatment about which Murrell complains was at all attributable to any of the grounds made actionable by federal statute.

As connoted by the initial "E" (standing for "Equal") in "EEOC," all federally cognizable claims of employment discrimination must be based on a right to equal treatment in one or more of the categories marked out by the respective statutes:

principally race, national origin, sex, age or disability. It has often been said by our Court of Appeals (see, e.g., Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 697 (7th Cir. 2006))--and by this Court as well, of course (see, e.g., Cross v. Roadway Express, 861 F.Supp. 698, 703 (N.D. Ill. 1994), citing a slew of the Seventh Circuit opinions to the identical effect)--that the role of federal courts in this area is not to serve as a second-guessing "super-personnel department" to deal with employment disputes not involving the violation of the specific statutes.

Here Murrell received an extensive hearing at the administrative level, resulting in a 25-page single spaced opinion issued by the Department of Agriculture. And these are the opinion's final two paragraphs:

> We note that when the Complainant was asked to explain why she believed that management's conduct was based on age or reprisal, she was unable to provide an adequate answer to support her evidentiary burden. The Complainant stated that she suspected age discrimination because "they know that I am getting up in age." The Complainant stated that she suspected reprisal because "I believe it was reprisal." She also speculated that "It could be personality clashes. They are trying to find the least little things to pick with me. I do know there is favoritism in the office." (RO192, Exhibit 7, pgs. 50-51, 53, 55).
>
> The evidence presented in the record fails to establish that age or reprisal was the real reason for management's conduct. The Complainant has not carried her ultimate burden in this regard.

This Court has reviewed the opinion in detail, and it is really an understatement to say that nothing in Murrell's

principally race, national origin, sex, age or disability. It has often been said by our Court of Appeals (see, e.g., Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 697 (7th Cir. 2006))--and by this Court as well, of course (see, e.g., Cross v. Roadway Express, 861 F.Supp. 698, 703 (N.D. Ill. 1994), citing a slew of the Seventh Circuit opinions to the identical effect)--that the role of federal courts in this area is not to serve as a second-guessing "super-personnel department" to deal with employment disputes not involving the violation of the specific statutes.

Here Murrell received an extensive hearing at the administrative level, resulting in a 25-page single spaced opinion issued by the Department of Agriculture. And these are the opinion's final two paragraphs:

> We note that when the Complainant was asked to explain why she believed that management's conduct was based on age or reprisal, she was unable to provide an adequate answer to support her evidentiary burden. The Complainant stated that she suspected age discrimination because "they know that I am getting up in age." The Complainant stated that she suspected reprisal because "I believe it was reprisal." She also speculated that "It could be personality clashes. They are trying to find the least little things to pick with me. I do know there is favoritism in the office." (RO192, Exhibit 7, pgs. 50-51, 53, 55).
>
> The evidence presented in the record fails to establish that age or reprisal was the real reason for management's conduct. The Complainant has not carried her ultimate burden in this regard.

This Court has reviewed the opinion in detail, and it is really an understatement to say that nothing in Murrell's

grievances even suggests or carries any implication of age-based discrimination. And as for her reprisal claim, it must be remembered that for asserted reprisal conduct to be actionable, it must relate to a prior claim of unlawful discrimination that, even if unsuccessful, must have plausibly articulated the existence of activity protected by one of the anti-discrimination statutes (see, e.g., Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1007-08 (7th Cir. 2000)).

As this Court earlier stated in its November 21 memorandum order before Murrell tendered her now-received Response, this case is appropriate for the application of the requirement of "plausibility" that the Supreme Court recently announced in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965, 1973 n.14 (2007). Even when the Complaint is viewed through the less demanding lens of non-frivolousness under the standards set out in Neitzke v. Williams, 490 U.S. 319, 325 (1989) and Denton v. Hernandez, 504 U.S. 25, 32-33 (1992), it fails to pass muster--and that is the non-financial portion of the test for granting or denying in forma pauperis status.

Accordingly the Application is denied, and Murrell is granted until January 11, 2008 to pay the filing fee, failing which both the Complaint and this action will be dismissed. In that respect it is only fair to caution Murrell that if she decides to pay the filing fee it seems inevitable that she will

3

be confronted by a government motion for dismissal in any event.

                                        _____
                                        Milton I. Shadur
                                        Senior United States District Judge

Date:    December 13, 2007

UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois
Eastern Division

| | |
|---|---|
| MICHELLE MURRELL, | ) |
| | ) |
| Plaintiff, | ) Case No.: 1:07-cv-05656 |
| | ) Honorable Milton I. Shadur |
| v. | ) |
| | ) |
| MIKE JOHANNS, SECRETARY | ) |
| Of AGRICULTURE, (USDA) | ) |
| | ) |
| Defendant. | ) Date: December 10, 2007 |

## RESPONSE

This acknowledges a Response to Employment Discrimination in which I was wrongfully fired for unsubstantiated, procedurally incorrect, unlawful, discriminatory and retaliatory reasons. I received a Final Agency Decision on September 4, 2007 in which I totally disagreed with the decisions made due to the fact the Agency's Action is wrong for the following reasons:

## FACTS PRESENTED

(1) My initial Complaint was filed on January 23, 2001, which I was subjected to continued harassment by management and was discriminated against in reprisal after seeking informal EEO counseling. The discriminatory actions are evidenced by the following facts:
   1. On November 1, 2000, I received an inferior performance rating.
   2. My leave requests have been denied on numerous occasions since January 2001.
   3. I have been placed on Absent without Leave (AWOL) status on numerous occasions since January 2001.
   4. I have been placed on leave restriction.
   5. I no longer accrue annual and sick leave.
   6. On August 27, 2001, I received a letter of Proposal to Suspend.

(2) In August 2000, I started experiencing health problems and September 2000, I had surgery. After the surgery things got worse. I was under the supervision of my Doctors due to extensive medical issues, which documentations/records were submitted to Management Officials/the Agency.

(3) During the period of the Investigation, September 2004, Mary Cartman/Contract Investigator was informed that I was hospitalized and did not know how long of a stay due to complications/problems and also a longer recuperating period.

## ISSUES PRESENTED/RESPONSES

### No. AMS-2004-00990:

1. Management provided her with Letters of Reprimand (dates unspecified) and an unfair performance appraisal (date unspecified);
2. Management scrutinized her assignments more closely than others;
3. Management charged her Absent Without Leave (AWOL);
4. Management placed her under leave restriction; and
5. Management suspended her (dates unspecified).

***NOTE**: See Michelle Murrell's EEO Complaint (<u>Part I, II, III and Exhibits</u>) pertaining to the above issues***

### No. AMS-2004-00992:

1. On December 19, 2003, she was placed on administrative leave for insubordination involving unauthorized use of the conference room;

**On December 19, 2003, Mrs. Shauna Goins and I were coming down the hall from our break and Mr. Kenneth Vorgert, National Field Director, came down the hall yelling at both of us from the top of his lungs and pointing his finger in my face. He asked who gave us permission to use the conference room. *Note: We were never told that we could not use the conference room at all and neither was it put into writing. We were only told verbally within a staff meeting that we could not pray or eat in the conference room. Well, I politely asked Mr. Vorgert to lower his voice and to stop pointing his finger in my face and I didn't appreciate him yelling and screaming at me. He did not give us the opportunity to explain why we were using the conference room, which was very brief. It was a confidential matter that we could not discuss within the office cubicles where others could overhear our conversation. Again, Mr. Vorgert approached me, to come in his office, to hand me a letter, stating that my duties has been suspended for today and I am placing you on administrative leave and also that I was insubordination. (<u>Management Officials are always threatening me constantly with insubordination charges and AWOLS</u>)**

2. On December 22, 2003, she was charged with three hours of AWOL for EEO counseling time and told she would be informed of further administrative/adverse action in the near future; and

**Now, on Monday, December 22, 2003, I called in to speak to Mrs. Bari Kinne but I was Informed by Mrs. Shauna Goins, Receptionist, that Mr. Kenneth Vorgert gave her specific instructions for me to speak with him directly or transfer me to his voicemail if he's unavailable, but I'm not to speak to anyone but him, which she transferred me to Mr. Vorgert's voicemail due to his unavailability. I left him a detailed voicemail message, and letting him know that I will be in later (Mid-Morning). *Note: I was taking care of this EEO Issue outside of this Department/Agency. Mrs. Kinne and Mr. Vorgert wanted to meet with me on December 22, 2003 but Mrs. Kinne kept harassing me and asking me what I'm doing and I told her I'm working on my EEO Issue. Then, she finally left me alone.**

3.  On December 23, 2003, she was instructed to speak directly with her second-level supervisor concerning time and attendance matters, she was charged with failing to leave a message for that purpose; and she was informed of receipt of the requisite message.

On Tuesday, December 23, 2003, shortly after our Staff Meeting, Mrs. Bari Kinne, Area Administrative Officer and immediate Supervisor, came to me and asked me why I didn't call in and that she didn't get any messages, etc. I informed her that I did call in and she asked me who did I speak to and I told her I left Mr. Vorgert a voicemail message and she said, "I am your Supervisor and you are to call me direct and nobody else." Later, she came back and said Mr. Vorgert said, he did not get a message from you. She was very persistent to tell me that I did not call in prior to arriving to work. A few minutes later, Mrs. Kinne came back to me and said that she and Mr. Kenneth Vorgert wanted to meet with me in Mr. Vorgert's Office. The meeting was held at 10:15 AM and Mrs. Bari Kinne presented me with another letter of reprimand that stated: Unauthorized absence-Inappropriate Behavior-Monday, December 22, 2003. Mrs. Kinne read the entire letter to me while Mr. Vorgert looked and listened. Then, Mrs. Kinne told me that I didn't call in and that Mr. Vorgert <u>did</u> **not** get a voicemail message from me and Mr. Vorgert spoke up to say, "Michelle I'm telling you that you did not leave me a voicemail message. At this point, I got tire of the harassment/badgering. I could see right through Mr. Vorgert and Mrs. Kinne and I stated to Mr. Vorgert, if you left Mrs. Goins with Specific instructions for me to speak directly to you or leave you a voicemail message, then, everyone was informed including Mrs. Kinne, so, stop playing games with me. <u>They could not say a word because they knew I was telling the truth</u>. I told Mr. Vorgert, that's unusual for me to leave someone a voicemail message after hearing their message and they not receive my message. He said, well, I'm telling you, I did not get your message. So, I said, ok. I received Mrs. Kinne's Letter and went back to my desk. Then, I started making calls to the Washington Headquarters Office concerning this matter and while I was on the phone, Mr. Vorgert was in Mrs. Kinne's cubicle talking to her and overhearing my conversation. He immediately, had Mrs. Kinne call me to his Office to apologize and he personally, came in my cubicle and told me he made a mistake and that my voicemail message was on his phone. Again, he wanted to insubordinate me because I did not want to come back to his office for him to apologize to me. I told him apologize to me in the open around everybody, just like he badgered me. Finally, he wanted me to listen to my own voicemail message that I left him, which was there all the time. It's amazing how my voicemail re-appeared after I was told continuously that it was not there and after both Mrs. Kinne and Mr. Vorgert overheard my conversation with the Washington, D.C. Headquarters Office.

***<u>NOTE</u>: See Michelle Murrell's (<u>Exhibits</u>) pertaining to the above issues***

Dated: December 10, 2007

_____
Michelle Murrell
Plaintiff

# CERTIFICATE OF SERVICE

**Complainant:**     Michelle Murrell

**Case Number:**     1:07-cv-05656

**Case Title:**      Murrell v. Mike Johanns, Secretary
                     Of Agriculture (USDA)

I certify that this ORDER was sent today:

By regular mail to:

| | |
|---|---|
| Agency Head: | Lloyd C. Day<br>Administrator<br>Agricultural Marketing Service<br>1400 Independence Ave., SW<br>South Building, Room 3071-S<br>Washington, DC  20250 |
| Agency Liaison: | Ruihong Guo<br>Director, Civil Rights<br>Agricultural Marketing Service<br>1400 Independence Ave., SW<br>South Building, Room 3068-S<br>Washington, DC  20250 |

_____          December 10, 2007
Michelle Murrell                   (Date)
Plaintiff

# MICHELLE MURRELL

## USDA/AMS/DAIRY GRADING BRANCH

## EEO COMPLAINT

## (PART I)

**PHONE CALL MADE TO CONSTANCE BAILS, DIRECTOR/CIVIL RIGHTS DIVISION THURSDAY, NOVEMBER 2, 2000 @ 1:10 PM** - LEFT MESSAGE WITH MS. MELISSA AND WAS TOLD THAT MRS. BAILS WILL RETURN MY CALL.

(AWAITING A RETURN CALL)

**I RECEIVED A RETURNED PHONE CALL FROM MRS. BAILS, DIRECTOR/CR, ON TUESDAY, NOVEMBER 7, 2000** - REFERENCING PERFORMANCE RATING AND ~~LEAVE AND ATTENDANCE ISSUES:~~

## RECORD OF EVENTS, WHICH OCCURRED BETWEEN KEN VOGERT, NOREEN PETERSON, BARI KINNE AND MICHELLE MURRELL

**MEETING: Wednesday, November 1, 2000 @ 2:00 PM, LOCATION/CONFERENCE ROOM:**

Mrs. Bari Kinne requested a meeting in reference to my Performance Appraisal.

Mrs. Kinne was reviewing my End Of Year Review (Job Duties) along with my Performance Appraisal, as we were going over these items, I noticed the tedious nick and pick items indicated by her verbally and also stated in my review items, which she had to correct. Example: Such as, leaving a file on my desk that I am working with in order to complete the next day. Information pertaining to the State's Reimbursements should be all filed according to each State file, which I've been maintaining correctly. (SEE BARI KINNE'S NOTE CONCERNING THIS ISSUE, DATED NOVEMBER 1, 2000). I told her I disagree with my Performance Appraisal Rating and refused to sign.

Mrs. Kinne then preceded the meeting with another letter she wanted me to sign concerning leave restrictions, which I disagreed with and also refused to sign. She indicated in this same letter that I met with her and Mr. Ken Vorgert, National Field Director at the same time and this is not true. After our meeting on this same day, November 1, 2000 @ 2:45 p.m., I heard Bari Kinne make a statement to a friend that "I don't want to hear her sympathy-I wasn't going to hear it!"

**MEETING: Wednesday, November 1, 2000 @ 3:45 PM, LOCATION/KEN VORGERT'S OFFICE:**

Due to the disagreements concerning this meeting, I took the initiative to meet with Mr. Ken Vorgert, National Field Director, whom has stated at the beginning of my appointment with AMS/Dairy Grading Branch that "he has an open door policy if there's anything I need to discuss with him please feel free to do so." **I found this to be untrue**, He prejudged me and never got to know my work performance or me. Now, as I met with Mr. Vorgert, he really didn't want to hear what I had to say and told me that he is sorry, but he have to agree with Mrs. Kinne's decisions. I told him I should have received a **Superior Rating** not **Fully Successful**. Then, I told him that anybody who knows me in Washington, D.C. knows my background and he stated, "What you do in D.C. doesn't work here and as a matter of fact I don't like your work." "My work is not acceptable as far as he's concern." I told him because of my condition, I needed some flexibility and he stated he could not do that because he needed me to be here at 8:00 a.m. Then, I said, this is not the job for me because I need flexibility; maybe you should find someone else. I said, ok stood up and walked back to my desk and Mr. Vorgert followed me all the way back to my desk, he must of realized what he said, and tried to correct what he said, by saying: "I like your work and I want you to stay here until I retire or as long as you want. He stated, since I held you over your time, you can sign out at 5:15 p.m. today and I will approve it.

## OVERVIEW OF ISSUES

Apparently, Mrs. Kinne has some deep issues which need to be addressed, prior to all of this happening she use to come to me all the time talking about Mr. Ken Vorgert and some of the statements made were he was groomed for the position he has now and they didn't see eye to eye on a lot of issues. Now, she would come to me when she was upset with him or Ms. Noreen Peterson, Assistant National Field Director. She cursed out Ms. Peterson and then came back to her cubicle and was crying like a baby. So, I heard her crying, and asked her if she was all right, then she told me that she just cursed out Noreen and she starting taking all of her belongings down, pictures, other personal items, and stated, that she was quitting because she couldn't do this job anymore. I told her she's upset right now and you may want to get yourself together before making a decision like this. Now, both Mr. Vorgert and Ms. Peterson know this is true because they came over to her cubicle to talk her out of the decision she was about to make.

The entire Staff noticed all of her belongings gone the next day and was asking me questions about what had happen. She has made statements to me about Mrs. Constance Bails, Director of Civil Rights.

I was told by other co-workers who wants to remain anonymous stated that since Mrs. Kinne came on board with the staff there have been problems on top of problems and Mr. Vorgert and Ms. Peterson just caters to her all the time.

I quess the Staff never spoke up to these wrongdoings but I don't like injustice especially, when its concerning me.

## ATTORNEY OMAR MELEHY:

Mr. Melehy, I hope that all the information I have provided to you would be helpful in reviewing my case being that I'm a million miles away. Again, I thank you for taking my case, which has helped me a great deal. Also, please note that my home phone number has changed to **(630) 946-0843**, effective as of Friday, April 6th. Should you have any questions concerning anything, please feel free to call me.